Robertson, Ch. J.
It is not claimed, in this case, that the making or conducting of the limited partnership entered into by the defendants, Demarest, Middleton and Smith, formed originally a part of any fraudulent scheme to defraud the plaintiff, of which the assignment assailed in this action was the completion. Nor does the complaint deny that the proper legal steps were taken to dissolve such partnership, or that, upon its dissolution, the general partners assumed a liability to the defendant Smith, for the sum of $10,000, either as a restoration of the capital contributed by him, or the consideration for the purchase of his interest in the assets of such firm. Nor is it pretended either that such" sum was not originally paid in by Smith, or that the transaction between him and the general partners, in which their drafts for such sum were given, would not have been perfectly fair, provided no general partnership had been formed. Nor that the defendant Smith was a party to any transaction to prejudice those who were creditors of the limited partnership at the time of its supposed dissolution. Although, even if he had been, no one but such *168 creditors could complain of it. (Lachaise v. Marks, 4 E. D. Smith, 610.) Nor do I understand that the plaintiffs go so far as Seriously to contend that, so far as they were concerned, the limited partnership, in consequence of a failure to dissolve it, or from any other cause, so continued in law to the time of incurring the liability to them for which they obtained judgment, as to make it a debt of the limited and not the general partnership, and even down to the time of executing the assignment in controversy, so as to make it void as to any assets assigned as being the property of such continued limited partnership. On the contrary, the creation of the new partnership, the substitution of the liability of the new firm for that of the limited partnership, for the debts of the latter, and the continuance of such firm in business long enough to pay the debt 'so assuihed, and give the transaction an appearance of good faith, and its ultimate failure, after, paying or securing the defendant Smith, are made, in the complaint, part of a scheme to defraud somebody, although it is not stated who that was. The principal part of the property, however, transferred by such assignment, is also alleged, in such complaint, to have been acquired by the defendants Demarest and Middleton after the time of the supposed dissolution, and it is made a matter of complaint therein that a very large proportion of the debts, owing- (query, by whom ?) at the time of the assignment, 'was contracted for property acquired “ in the firm name,” the avails of which were applied to pay the debts of what the defendants claim- to have been a distinct and different business. These allegations would have been all immaterial if the plaintiff's were, (as they do not claim in their complaint themselves to have been,) creditors of a limited partnership, who had executed an assignment, void by reason of its preference of creditors, and securing a special partner.
Any liability of the defendant Smith to the plaintiffs; as a general partner or otherwise, for the debt on which they have obtained judgment, ¡(if he has made himself so,) is immaterial, -both because the plaintiffs -have waived such liability, by *169 taking a judgment against Demarest and Middleton alone, and such fact has no possible bearing upon the question of fraudulent intent or illegality of the assignment. That instrument would not be fraudulent, as against creditors merely, because the defendants Smith, Demarest and Middleton, combined to procure from the plaintiffs, or any other person, property wherewith to obtain the means of discharging liabilities of the limited partnership, and securing to the defendant Smith the payment of the amount for which he relinquished his interest in the assets of such partnership. Such a combination might, under some circumstances, afford good grounds for making Smith personally liable for the value of such property, or have enabled the plaintiffs to maintain an action for its restoration. But the title to such property is vested in the assignee by the action for the price, while any claim against the defendant Smith is merged in the judgment against the other two. Besides, the plaintiffs have waived all objections to such assignment, upon any grounds peculiar to themselves, by commencing this action on behalf of themselves and. all other judgment creditors ; not even setting out what the nature of the debt was for which they obtained judgment.
It is insisted, however, that the assignment in question is void, by reason of the preference of the claim of the defendant Smith. Not because it was simulated, or was not justly due, since that was not asserted in the complaint, or sustained by any evidence, but because Demarest and Middleton, being general partners, and already liable for the debts of the limited partnership, agreed with Smith to substitute for such debts the liability of the' new general partnership then formed by them, keeping up the business of such new firm only long enough to pay such debts, and acquire an appearance of good faith, but with the understanding or expectation that it must and should ultimately fail, after having fully paid or secured Smith, and executed the assignment in question, in pursuance of such plan.
It is very plain that Demarest and Middleton would not, even if they succeeded in such plan of substituting the respon *170 sibility of a new general partnership for that of the limited one, change or shift any personal liability of their own thereby. They could only relieve, by such substitution, the assets of the former firm from the liability to be applied specifically to the payment of its debts, and distributed equally among its creditors, (Innes v. Lansing, 7 Paige, 583,) and, of course, not until those very creditors acceded to such substitution. For any fraud in accomplishing that, only such creditors would have a right to complain. The defendant Smith could derive no advantage from such substitution, after he had relinquished all his interest in the assets of the old firm, as there is no allegation in the pleadings, or pretense, of any conduct or omission of his which would render him liable, as a general partner, for any debts of the limited partnership, even if the plaintiffs were its creditors. The expected ultimate, failure of such new firm is alleged, in the complaint, to have been known to the parties to be an inevitable necessity. Any arrangement, therefore, to produce it would be useless. An agreement to postpone such failure until the debts of the old firm were paid, by the assistance of the money and credit of the defendant Smith, was certainly not fraudulent by itsélf, nor would the mere payment or security of the debt due to him be, as he was equally entitled thereto with any other creditor. There is no allegation in the complaint, or evidence; of any understanding, that the defendants Demarest and Middleton should employ any fraudulent means to bring about the change of liability. The whole arrangement, therefore, to which the term “fraudulent” is applied in the complaint," consisted' of an agreement to procure previous creditors to relinquish their specific claims to the assets of the prior firm, to pay off such creditors by means legally obtained from their new business, and to secure the defendant before a failure happened, which was considered inevitable.
But, even assuming that the whole of such arrangement was fraudulent, as regarded some one, to wit, such as trusted the new firm, that was not the kind of fraud which would make such assignment void under the statute of frauds. That *171 statute (2 R. S. 137, § 1,) only makes vicious assignments void against the parties hindered, delayed, or defrauded. There is no allegation or pretense that the plaintiffs were so, by any fraud, except a change of liabilities. Besides, the only vice which it declares avoids them, is an intent to hinder and defraud persons of suits, damages, forfeitures, debts or demands. The mere preference of a lawful debt is held not to do so. If the preference had been given in consequence even ■ of an additional illegal act agreed to be done by a lawful bona fide creditor, provided it was not one tending to hinder or defraud other creditors, it would not, I apprehend, render such instrument void under the statute of frauds, although, possibly, it might defeat the right of such creditor to claim the benefit of such assignment. The only illegality which avoids such an assignment, under that statute, is that which makes, or endeavors to make, it the instrument of defeating or delaying the collection of debts by due course of law.
The evidence in the case, however, of any fact tending to make out fraud of any kind, was very conflicting. And, although there is no express finding upon any question of fraud or fraudulent intent, except against a fraudulent combination or agreement, at any time, on the part of the defendant Powers with any of the other defendants in regard to such assignment, it must be presumed, if necessary in order to sustain the judgment, that the opinion of the court was adverse to the plaintiffs upon the proof of fraud, and such finding is not to be disturbed on appeal. (Ball v. Loomis, 29 N. Y. Rep. 412.)
An attempt was made on the trial to establish that the debt to the defendant Smith, secured in the assignment, was due from the defendant Middleton alone. But the acceptances given for it were signed by Demarest with the firm’s name • they were given for Smith’s interest in the assets of the old firm, which were brought into the new, as its capital. Besides, the testimony as to its being the separate debt of Middleton was contradicted. There is no ground for interfering with the judgment on that ground. It was assumed in the argument *172 on behalf of the plaintiff, that all the steps for the legal dissolution of the limited partnership were not completed until September, 1861, apparently on the ground that the defendant Smith admitted in his answer that the proofs of publication of the notice of dissolution were not filed until- that time, but that was not rendered necessary by the statute, provided such notice had been duly filed, recorded and published. (1 R. S. 767, § 24, 5th ed.) The date at the foot of the published notice (September, 1865,) was evidently a clerical error, and there is no direct evidence what the last day was on which such notice of dissolution was published; most probably it was at the end of July, 1861. It does not appear that any business was transacted by, or on behalf ofj such limited partnership, after the filing of such notice, and therefore Smith could not become a general partner as to any one. Eo force of legal fiction can convert creditors of the general partnership of Demarest and Middleton, consisting of them alone, into creditors of the prior limited partnership, so as to prevent the former from making a preferential assignment.
The omission from the inventory of the debt due to Messrs. Thorp, must be presumed to have been done innocently; indeed, there is no evidence of fraud, except the omission itself, and the statute does not avoid an assignment for such omission. It was not omitted from the assignment, since that does not profess to give the names of all creditors, while it provides in general terms for the payment of all the debts of the firm. The covenant in the assignment, by the assignee, to execute the trusts “ to the best of his skill, knowledge and ability,” if below the legal standard of his duty, is merely supererogatory and harmless. He is bound, notwithstanding, by such standard, and there is no exemption of- him therefrom in the assignment.
The question put to the defendant Middleton, as to the object of the defendant Smith in becoming a special partner, was not only immaterial to any issue in the action, hut was in an improper form. He could only testify as to some act or expression of Smith, showing his object, and not give his own *173 general inference. Besides, no foundation was laid by showing that he had the necessary knowledge of such object. The general partnership agreement was properly admitted in evidence on the certificate of the notary public. The statute of 1833, (ch. 271, § 9,) gives to every instrument (except certain ones) proved or acknowledged in the manner provided for taking proof or acknowledgment of conveyances of real estate,'the same effect as if it were such a conveyance. And a conveyance certified to have been proved by a subscribing witness, before a proper officer, may be read in evidence. (1 R. S. 759, §§ 16, 17, 1st ed.)
I do not find any errors in the admission or exclusion of testimony, or the principles of law applied. The judgment must, therefore, be affirmed, with costs.
McCunn, J, concurred.
Jones, J.
From the frame of the complaint, and the allegations therein contained, I am of opinion that the validity of the assignment is attacked on fpur grounds only.
1st. A fraudulent and intentional omission from the list of creditors, and from the inventory filed under the act of April 13, 1860, of a debt due an English creditor.
2d. That the property of the judgment debtors has not been fully and fairly made over under the assignment, and has not been fully and fairly specified in the inventory filed as aforesaid, and has not been all. surrendered to, or taken possession of, by the assignee.
3d. That the assignee was selected by the defendant Smith ; that the terms and provisions of the assignment were dictated by said Smith; and that the assignee ha,s been mainly controlled in the discharge of his duties by said Smith.
4th. That the defendant Smith was preferred in the assignment, for a fictitious debt, averring that he had been engaged in business with the defendants Demarest and Middleton, and had put in as his capital $10,000; that such business was disastrous, and the assets, of the business, including the *174 $10,000, were insufficient to pay the debts. That in this position of affairs an arrangement was made whereby the firm was to pay to Smith this $10,000, although not indebted to him therefor. That the scheme was that Smith should retire from the business, and sell out his worthless interest to the other two for $10,000, and those two should continue the business as a firm, and give their notes to Smith for the $10,000. That this was done, and the notes given, and that these notes constitute the claim for which he is preferred.
As to the first ground of objection, it is clear that the debt in question is omitted from the schedule of creditors and the inventory. Such omission, unless fraudulently done, will not vitiate an assignment, especially where the debt is included in the general language of the assignment itself. In this case, there is no evidence that the omission was fraudulent.
As to the second objection, the judge who tried the action has found against it as a matter of fact, and his finding is supported by the evidence.
As to the third objection, the same remarks apply as are applicable to the second.
As to the fourth objection, the gist of it is that the debt to Smith was a fictitious one. If it was a good, valid and existing debt, the objection falls to the ground. The judge below found that the debt was a good, valid and existing one. I see no reason for disturbing this finding. One member of a solvent firm may retire from the firm, and sell out his interest to the remaining partners, and the sum agreed to be paid for his interest will constitute a fair and valid debt against the remaining partners, provided the transaction is in good faith. I think the evidence sustains the conclusion, to which' the judge, in finding the debt to be fair and honest, must have come, that the special partnership was solvent at the time of the sale of Smith’s interest, and that such sale and his retirement were bona fide.
Of course, if the vendor, notwithstanding the form of a sale is still secretly to retain his interest in the firm, share the profits thereof, if any, and only to rely on the sale in case of *175 insolvency, then the sale would be merely colorable, and such vendor would remain liable as a partner, and an assignment preferring his claim for the amount of the sale would be invalid, both as preferring a fictitious debt and as preferring the debt of a partner. The judge below, in finding that the debt was fair and honest has necessarily found that the sale in question was not of such colorable character, and I think the evidence sufficient to sustain the finding.
There are many allegations in the complaint, and much proof of a scheme to defraud creditors, subsequent to the sale by, and retirement of Smith, by obtaining goods on credit, with the design of paying the debts for which Smith was liable, and also the notes given to him with the proceeds of such goods, and after such payment, of failing, leaving no, or but little assets to pay such subsequent creditors. This scheme of fraud might perhaps enable the subsequent creditors to replevy their goods, or to arrest the parties concerned in it, or to sue Smith for the price of their goods ; but it does not affect the validity of the assignment.
There is one view, however, in which this scheme would have a bearing on this case, and that is as tending to show that the sale by Smith was not bona fide. The judge, in finding that sale to be bona fide, necessarily finds against any facts tending to show that it was not bona fide, and I cannot say that his finding is against the weight of evidence.
The plaintiff, however, contends that the assignment is void on the following grounds :
1st. That the limited partnership not having been validly formed, Smith became a general partner, and .that such general partnership was never validly dissolved, and consequently preferring him, was preferring a debt of the partnership.
2d. That the limited partnership was validly formed, but by reason of certain informalities in the proceedings for its dissolution, Smith became a general partner, with the same result as stated in the first proposition.
With respect to these two propositions, they rest on the basis that where a partnership exists between two or more, *176 such partnership cannot inter sese prefer one of the partners' for a debt due him by the firm ; and it is contended that Smith having become a general partner remains such until a dissolution, and that the partnership has never been dissolved.
A general partnership may be dissolved by mutual consent of the co-partnership. It is not necessary that there should be any writing or formality about it, nor is notice to the world or to dealers necessary. If notice is not given, all the partners still remain liable as partners for an indebtedness subsequently contracted by one of them. This liability, however, does not constitute them partners inter sese. The existence of such liability has no bearing on the right and power of one partner of a solvent firm to retire bona fide from the firm, and on such retirement, to sell his interest to the remaining partners, and take their notes in payment, which will constitute a valid claim against the remaining partners, and can be legally preferred by them in an assignment made by them.
Considering the connection between Smith, Demarest and Middleton to be that of a general partnership, I am at a loss to perceive why under the evidence it was not properly dissolved.
The proceedings taken to dissolve it under the statute relative to limited partnerships can, if it never was a limited partnership, have no effect. They were merely supererogatory. The dissolution was consummated by the act of Smith retiring with the consent of the other partners, selling his interest to the new firm and receiving his pay.
The idea is shadowed forth, however, that the limited part-ship was validly formed, that consequently under the statute the sale of Smith’s interest turned it into a general partnership, and that the result of this is that the same act which created the general partnership cannot be said to dissolve it, and that having become a general partnership it cannot be dissolved as a limited one under the statute relative to such partnership.
I think the idea is erroneous.
The 12th section provides that “ Every alteration which *177 shall be made * * * * in the capital or shares contributed, held or owned by any of the special partners and the death of any partner, whether general or special, shall be deemed a dissolution of the partnership unless ® * ® * and every such partnership which shall be carried on after such alteration shall have been made or such death shall have occurred shall be deemed a general partnership in respect to all business transacted after such alteration or death, except * * ® ®.”
By this section such alteration or such death ipso facto dissolves the limited partnership, and, if the business is thereafter carried on, the partnership becomes a general one as to such business.
After it becomes a general partnership, the provisions of the act which are intended to prescribe the powers and duties of, and to place restraints on, a limited partnership cease to be applicable, and it becomes possessed of all the powers, rights, privileges and incidents, and subject to all the duties and liabilities of a general partnership, formed in the ordinary way. It follows that the members of a general partnership created by the statute can in the same manner as a general partnership formed in the ordinary way, at any time, dissolve the partnership by mutual consent without notice to its dealers or the world ; the only effect of not giving notice being as has been hereinbefore stated.
This then being the right and power of partners in a general partnership, I see no reason why when the matters, which •dissolve the limited and raise a general partnership under the statute, consist of an agreement between the partners whereby one withdraws entirely from business connection with the others and sells out his interest to them, and of acts done in carrying out such agreement, those very matters should not operate eo instanti the raising of the general partnership to dissolve it. '
The effect of this doctrine is to make general partners only those members of the special partnership who continue to be interested in the business, after an act which, under the statute, *178 amounts to a dissolution of the special partnership, with a liability on the withdrawing members to be charged as if they were general partners, at the instance of such persons who, being former dealers with the firm, have had no actual notice of the withdrawal, and of such persons who, not having been former dealers, have had no constructive notice.
Under this construction of section 12, conceding that under the facts of this case a general partnership was created under the act, yet it was immediately dissolved by the withdrawal of Smith and the organization of a new firm ; and the purchase by that new firm, at the time of the dissolution, of Smith's ■ interest was valid and the obligations given by the new firm for the purchase money constituted a valid and just debt.
If, notwithstanding the dissolution of a limited partnership under section 12, the limited partnership still continues for some purposes, yet it may be put an end to for all purposes by the filing and publication of a notice under section 24.
From the tenor of this section it seems to me that partners in a limited partnership may at any time dissolve it inter sese, but that the notice must be filed and published and the term for the publication have been completed before the dissolution takes effect as to third persons. The fact that there was a dissolution inter sese prior to the filing of the notice, does not vitiate the effect of such notice. On the contrary there must be such a dissolution before notice, if it can be given. It results from this that only those who become creditors prior to the expiration of the term of publication can claim that the firm still retains its impress of a limited-partnership and is subject to the provisions of the act, and those creditors, only, can attack the acts of the partners as being contrary to such provisions.
In the present case, if notwithstanding the acts of the partners, the limited partnership continued for any purpose, yet, by the filing and publication of the notice, it wholly ceased for all purposes at least as early as September 7,1861.
The plaintiffs not having become creditors prior to September 7, 1861, cannot attack any of the acts of the partners as *179 being contrary to the provisions of the act relative to limited partnerships.
What rights a person who became a creditor prior to September 7, 1861, would, under the circumstances of this case have, is not a matter for discussion or decision in this case.
The plaintiff’s counsel makes this further point, that the dissolution of the limited partnership and the ultimate assignment by the general partnership were intended to prefer Smith and secure him his 010,000, as special partner, at the expense of creditors, and that consequently they are inimical to the-provisions of the Revised Statutes relative to limited partnerships.
There are two answers to this: 1st. The plaintiffs never became creditors of the limited partnership, and therefore cannot invoke in their favor the provisions of the statute. 2d, As matter of fact, the dissolution of the limited partnership was not intended to prefer and secure Smith his 010,000 at the expense of creditors of that partnership.
With reference to the 1st, 2d and 8th points of the plaintiffs, I fully concur in the views expressed by Chief Justice Robertson.
I am of opinion that the judgment should be affirmed, with costs.